[Crim. No. 14. Third Appellate District.—February 3, 1906.]

## THE PEOPLE, Respondent, v. J. T. MORRIS, Appellant.

CRIMINAL LAW—RAPE—EVIDENCE OF SIMILAR ACTS.—In a prosecution for rape upon a female child under the age of consent, evidence of acts of lascivious conduct and of sexual intercourse, showing an uninterrupted and intimate adulterous relation for several years, both prior and subsequent to the particular act charged in the information, is admissible.

ID.—MISCONDUCT OF COUNSEL FOR PROSECUTION—COMMENTING ON FAILURE OF DEFENDANT TO TESTIFY.—In a criminal prosecution it is prejudicial error for counsel for the prosecution to comment upon or allude in any way to the fact that the defendant had refrained from testifying. Such misconduct warrants the reversal of a judgment of conviction and the granting of a new trial, even where the court promptly, on objection, checks counsel and directs the jury to disregard the statement, and instructs them as to defendant's right, under section 1323 of the Penal Code, to refrain from testifying as a witness.

ID.—ALIBI—DEGREE OF PROOF—INSTRUCTIONS.—In a prosecution for rape, where the defendant relied upon an alibi, an instruction that the "defendant is not bound to prove his defense of an alibi beyond a reasonable doubt to entitle him to an acquittal, for it is sufficient if he prove it by a preponderance of evidence, or to sufficiently prove it to create a reasonable doubt in your mind as to his presence at the time and place where the crime is alleged to have been committed," is erroneous, as authorizing the jury to deal with the issue as one to be proven by a preponderance of evidence;

3 Cal. App.—1

whereas, in fact, it need not be proven at all unless the prosecution has established *prima facie* the facts of time and place, and then not by preponderance or beyond a reasonable doubt, but only to such a degree of certainty as will, when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt of the guilt of the accused.

ID.—CONFINING EVIDENCE TO PARTICULAR HOUR—INFORMATION—INSTRUCTIONS.—Where an information for rape charged its commission on a certain day without fixing any particular hour, and the prosecuting witness testified to but one act on that day, and that it occurred at a particular hour, and the defense of an alibi at that hour is relied on by the defendant, the court should charge the jury as to that defense, so as to confine their consideration of the evidence to the hour, or about the hour, fixed by the prosecuting witness; and instructions which in effect and in terms charged them that they could consider the evidence with reference to the entire day are erroneous.

ID.—EVIDENCE INSUFFICIENT TO ESTABLISH RAPE.—The facts that the parties occupied the same room and were the only occupants of the house in which they were living, and had previously been guilty of a long course of adulterous cohabitation, are insufficient of themselves to warrant a conviction for the particular act charged in the information.

APPEAL from a judgment of the Superior Court of Napa County, and from an order refusing a new trial. H. C. Gesford, Judge.

The facts are stated in the opinion of the court.

Bell, York & Bell, for Appellant.

U. S. Webb, Attorney General, for Respondent.

CHIPMAN, P. J.—Defendant was informed against for the crime of rape upon a female child under the age of sixteen years. He was found guilty by the jury and was sentenced to imprisonment for the term of fifteen years at San Quentin. He appeals from the judgment of conviction on bill of exceptions.

1. It is urged that the evidence was insufficient to justify the verdict. Much of the evidence is too revolting to be permitted a place in published reports. It appears that the particular act on which the district attorney elected to rely oc-

curred about 4 o'clock P. M., December 25, 1903, at a house particularly located in the city of Napa by the prosecuting witness. Evidence was admitted, against defendant's objection, of prior and subsequent lascivious acts and sexual intercourse before and after the particular act relied upon. Error is assigned as to this evidence, which will be noticed later on. It appears that defendant formerly resided in Kansas, and was the owner of a farm which he leased to the father of the prosecuting witness, and the family took possession. The prosecuting witness was then a girl of nine years of age. Her evidence was that defendant commenced at that early period in her life to tamper with her sexually, and debauch her mind preparatory to the accomplishment of his purpose of having sexual intercourse with her when physically practicable. This latter he succeeded in doing when she reached the age of twelve years, although he had made ineffectual efforts at an earlier date. This was in one of the defendant's houses in Emporia, Kansas, which the family was occupying. Subsequently the defendant and the prosecuting witness (just when is not shown) came to California together, and five weeks later the father and mother of prosecuting witness followed and went to Fresno county. Defendant was there, and it is in evidence that he continued his adulterous relations with her there. Later this family and defendant returned to Kansas, and some months afterward, about September, 1903, defendant brought the family to Napa. They first lived at what is called the Boxall house and next moved to 118 Main street some time prior to Christmas, 1903. It appears that some time prior to Christmas the parents were living at Santa Rosa, and the house 118 Main street, Napa, was occupied by defendant, prosecuting witness and her two sisters. The house consisted of two back bedrooms, a kitchen and a front room, the latter used by defendant as a bedroom, in which the prosecuting witness also slept. She was then under the age of sixteen. Her mother testified that she was sixteen on May 31, 1904. Defendant continued his sexual intercourse with her while in this house. Witness Bower came to room at that house in January, 1904, and occupied one of the back bedrooms. The two younger sisters of prosecuting witness had joined their parents at Santa Rosa before Christmas and defendant and prosecuting witness were

alone in the house, she still occupying defendant's room.
Bower became engaged to her, and early in March he went
to Stockton, and soon afterward she followed him to Stock-
ton to be married, and they were married there on April 17,
1904. Defendant went with the prosecuting witness to Stock-
ton and remained there, continuing his sexual intercourse
with her before and after her marriage, and in April took her
to Santa Cruz, where he occupied the same room with her
and repeated the acts previously indulged in. It was here
the conduct of the parties was so flagrantly indecent and re-
volting that the prosecuting witness was arrested, and this
information against defendant followed in July. The only
evidence in rebuttal was the testimony of certain witnesses
tending to establish an alibi as applying to the particular
hour, or near that time, as testified to by the prosecuting wit-
ness. There was also some evidence tending to contradict
certain of her statements as a witness. There was, we think,
sufficient evidence to sustain the verdict, though confined to
the specific act as elected by the district attorney. The evi-
dence as to defendant's absence from the place alleged at the
particular hour testified to by the prosecuting witness produced
a conflict in the evidence, but was not sufficient to warrant
this court in overriding the conclusion reached by the jury.
A question arises as to whether the jury were permitted to
give due weight to this evidence under the instructions of
the court, which will have attention later.

2. It is contended that the court erred to defendant's preju-
dice in admitting evidence of acts of lascivious conduct and
of sexual intercourse with the prosecuting witness prior and
subsequent to the particular act relied on by the district at-
torney at the trial. In the case of *People* v. *Koller*, 142
Cal. 621, [76 Pac. 500], the information charged incest. The
court quoted from *People* v. *Castro*, 133 Cal. 11, [65 Pac.
13], as follows: ''The doctrine appears to be fairly well set-
tled that, in actions of adultery, seduction, etc., evidence of
sexual intercourse between the parties, both before and after
the particular act charged, may be introduced in evidence,
as tending to sustain the allegation.'' That was a case of
rape upon a female under the age of consent. A new trial
was granted by the lower court and the order was affirmed
on the ground, however, that the court did not direct the

minds of the jury to the particular act of intercourse which it was incumbent on the state to establish by the evidence. Speaking of the evidence of other similar acts, both before and after the particular act relied on, the court adopted the view expressed in the dissenting opinion in the case of *State* v. *Hillberg,* 22 Utah, 27, [61 Pac. 215], as follows: "Where, as in this case, there is a continuation of the relation of intimacy and illicit intercourse between the parties to the offense (which was rape in that case), evidence of familiarity and adulterous acts both before and after the act charged is admissible. Such evidence is received to prove the adulterous disposition of the parties implicated. This appears to be the rule sanctioned by the weight of authority." Referring to the rule stated in *People* v. *Castro,* the court in the Koller case said: "We think this is a correct statement of the prevailing rule, and in principle applies not only in prosecutions of adultery, but in prosecutions for all cognate offenses involving sexual intercourse by consent, including incest." In the Koller case, Mr. Justice Lorigan, speaking for the court, reviewed the authorities with much care and amplification and has relieved us from further examination of the question. The evidence, as we have shown, presents the case of an uninterrupted and intimate adulterous relation for several years, continued up to the time of the arrest of the parties. It is true that the element of consent was immaterial, but the fact of consent is undisputed, and that fact would differentiate the case from one where actual force accompanied the act. What the rule would be as to some remote individual act subsequent to the forcible act charged is not involved. In such a case as we have here there can be no doubt that the rule in *People* v. *Castro* and in *People* v. *Koller* should govern.

3. Objection was made to the fact that the court permitted the reading of a certain letter which was finally excluded and the jury told to dismiss it entirely from their minds. Objection was also made to a remark made in his address to the jury by the associate counsel for the prosecution as follows: "If that is not true [referring to certain evidence], why has the defendant not taken the stand and denied it?" The court, immediately on objection of defendant to the remark, said to counsel that he "had better retract that," and in-

formed the jury of defendant's constitutional right to refrain from testifying, and cautioned the jury to wholly disregard the statement of counsel, and also in the instructions again called the matter to the attention of the jury and instructed them as to the right of the defendant and to disregard the remarks of counsel. It was error for counsel to comment upon or allude in any way to the fact that defendant had refrained from testifying. In *People* v. *Tyler,* 36 Cal. 522, *People* v. *McGungill,* 41 Cal. 429, and *People* v. *Sanders,* 114 Cal. 216, [46 Pac. 153], similar misconduct of the prosecuting officer was deemed prejudicial error, where the court permitted the comment to pass unrebuked. Such misconduct should, we think, work a reversal even where the court promptly, on objection, checks counsel and directs the jury to disregard the statement and instructs them as to defendant's right in the matter, as was done in this case. We are unable to see that the prejudicial impression irresistibly made upon the minds of the jury by such comment can be entirely removed by anything the judge may say or do after the mischief is done. For similar misconduct several courts of last resort have granted new trials. (*Hunt* v. *State,* 28 Tex. App. 149, [19 Am. St. Rep. 815, 12 S. W. 737]; *Brazell* v. *State,* 33 Tex. Cr. 333, [26 S. W. 723]; *Washington* v. *State* (Tex. Cr. App.), 77 S. W. 810, and other cases in that state; *Long* v. *State,* 56 Ind. 182, [26 Am. Rep. 19]; *Angelo* v. *People,* 96 Ill. 209, [36 Am. Rep. 132]; *Austin* v. *State,* 102 Ill. 261; *Yarbrough* v. *State,* 70 Miss. 593, [12 South. 551]; *Sanders* v. *State,* 73 Miss. 445, [18 South. 541].) In this last case a new trial was granted, although the court rebuked counsel and instructed the jury to disregard the comment, and counsel himself asked that the remark be considered as withdrawn. Section 1323 of the Penal Code expressly declares that the neglect of defendant to testify as a witness "cannot in any manner prejudice him, nor be used against him on the trial or proceeding." In the face of so plain a provision of law, we cannot say that it may be openly violated without prejudice to the defendant. As to the letter offered by the prosecution, it was properly ruled out, and will not probably again be offered. It should not have been read in the hearing of the jury. While the misconduct of special counsel was such

as to require the case to be remanded for a new trial, there
is one other matter calling for attention.

4. The court gave the following instruction: ''To the in-
formation in this case the defendant has interposed his plea
of not guilty, which puts in issue every allegation of the in-
formation, and entitles the defendant to the defense known
in law as an alibi; that is, that defendant was not at the place
where the crime charged is alleged to have been committed
at the time when it is alleged to have been committed, but
at another place. And I instruct you that such a defense is
as proper and legitimate, if proved, as any other. The de-
fendant is not bound to prove his defense of an alibi beyond
a reasonable doubt to entitle him to an acquittal, for it is
sufficient if he prove it by a preponderance of evidence, or
to sufficiently prove it to create a reasonable doubt in your
mind as to his presence at the time and place where the crime
is alleged to have been committed.'' The objection made by
defendant to this instruction is, first, that it requires proof
of the defense of alibi, and, second, that the burden is cast
upon defendant of making such proof by a preponderance
of the evidence. (Citing *People* v. *Cheong Foon Ark,* 61 Cal.
527; *People* v. *Bushton,* 80 Cal. 160, [22 Pac. 127, 549];
*People* v. *Roberts,* 122 Cal. 377, [55 Pac. 137]; respondent
replies by citing *People* v. *Winters,* 125 Cal. 325, [57 Pac.
1067].) In the latter case a somewhat similar instruction
was given, but it was there said that, strictly speaking, the
matter of alibi is not a matter of defense, and that the words
''if proved,'' standing alone, would be seriously misleading,
for, said the court, ''an alibi in no sense, in order to be suc-
cessfully involved, need be proved, as that word is ordinarily
used.'' In that case, however, we do not find the expression
used here, namely, ''for it is sufficient if he prove it by a
preponderance of evidence.'' True, the instruction here con-
tinues to read: ''Or to sufficiently prove it to create a rea-
sonable doubt in your mind as to his presence at the time and
place where the crime is alleged to have been committed.'' It
might be urged that this alternative clause removes the ob-
jection to the clause immediately preceding. The most favorable
view to be taken is that it leaves the jury in doubt as to what
is meant, but yet it also authorizes the jury to deal with the
issue as one to be proven by a preponderance of evidence;

whereas, in fact, it need not be proved at all unless the prosecution has established *prima facie* the facts of time and place, and then not by preponderance or beyond a reasonable doubt, but only ''to such a degree of certainty as will, when the whole evidence is considered, create and leave in the minds of the jury a reasonable doubt of the guilt of the accused.'' (Am. & Eng. Ency. of Law, 2d ed., p. 56.)

After the jury had retired to consider of their verdict they returned to the court, when the following proceedings occurred: ''Juror Robinson: May it please your honor, we would like the instructions read again concerning the hour of the day when this transaction is alleged to have been committed, the instructions upon that point.'' The court then read a number of instructions, concluding with the one above set forth. All these instructions referred to ''the act as charged in the information,'' namely, December 25, 1903. The court then asked if there was anything further. ''Juror Cook: I notice you say the time and place alleged. Does that mean in the information alleged, time and place alleged in the information? The Court: That is the instruction, Mr. Cook, time and place alleged in the information, as I have already instructed you. Under the instruction of an alibi, if you have any doubt, any reasonable doubt, in your minds as to whether the defendant was at the place where the crime is alleged to have been committed, at the time it is alleged to have been committed, then you must give the defendant the benefit of the doubt and acquit him. Juror Cook: And the time is on the 25th of December, 1903? Would the hour and the minute have anything to do with it? The Court: You must consider all the testimony in the case, and the minute, I will say to you, is not absolutely necessary, but you must believe from the evidence in the case, all of the testimony, that on the twenty-fifth day of December, 1903, the defendant committed the act charged against him, at No. 118 North Main street, in the city of Napa, county of Napa, state of California, and if you do not believe he committed it at that place you cannot find him guilty. Juror Wing: According to the evidence, the time is alleged to be about 4 o'clock, as I understand it. The Court: You are the judges of the evidence, gentlemen. If there is nothing further, the sheriff will conduct you to the jury-room. Juror

Robinson: To be a little more explicit, your honor, about this certain hour that is alleged, I think some of the jury have asked this: Does the day cover the ground, or has it got to be confined, as you said, to a certain hour, or a certain minute? The Court: I will charge you this way, gentlemen, as I have already instructed you, which covers the proposition: The act charged here by the people and under the statement of the district attorney in the commencement of this trial, is charged and fixed at 118 North Main street, on the twenty-fifth day of December, 1903. Now, unless you believe from the evidence to a moral certainty, and beyond a reasonable doubt, that on the twenty-fifth day of December, 1903, at No. 118 North Main street, in the city of Napa, county of Napa, state of California, the defendant had sexual intercourse with this prosecutrix, May Penrice, your verdict must be not guilty. Mr. Bell: To which statement of the court the defendant duly excepts. Now, if your honor please, in behalf of the defendant and in the interest of fair play, we ask this court to instruct the jury that any finding they may make upon what occurred upon the twenty-fifth day of December, 1903, as between this defendant and the prosecuting witness in this case, must be based upon the testimony produced here. The Court: That is what I have already instructed them, Mr. Bell, over and over again. The request of the defendant was denied and exceptions taken.''

It is clear that the trouble the members of the jury were having grew out of the fact that the prosecuting witness had testified to but one act on the day charged, and that it occurred about 4 o'clock in the afternoon, while the information fixed no hour of that day. As the evidence stood the crime charged was narrowed down to about 4 o'clock. There was testimony given by three witnesses that both defendant and the prosecuting witness were at the house of these three neighbors from about half-past 2 until near 6 o'clock and until after dark and lamps were lighted before they departed. The jury manifestly desired some instruction as to whether they were confined to the hour, or about the hour, fixed by the prosecuting witness, or could apply the evidence to any hour of the day charged. As this was the only act relied on by the prosecution it seems to us that the court should have given an instruction meeting the difficulty the jury were having. In-

stead of doing so, the court in effect and in terms charged the jury that they could consider the evidence with reference to the entire day. In this view of the case the jury might have found the evidence of alibi sufficient to overcome the evidence of the particular act relied on by the prosecuting attorney, and yet from all the circumstances the jury may have found the defendant guilty of a similar act at some other hour of the day. But there was no evidence of sexual intercourse at any other hour of that day on which a conviction could rest. The fact that the parties occupied the same room, and at that time were the only occupants of the house in which they were living went to the jury as a circumstance tending to support the particular act sworn to, as did also the evidence of a long course of adulterous cohabitation, but it was not sufficient to establish the charge, although the jury might have thought it sufficient. Sexual intercourse was the physical fact that had to be established, and it could not be inferred from the mere fact alone that the parties were living together in the same house. Proof of alibi need not include the whole of the day on which the offense was alleged to have been committed; it was sufficient if it created in the minds of the jury a reasonable doubt of defendant's presence at the commission of the offense. As the case was finally submitted by the court we do not think the jury were sufficiently or correctly instructed as to the issue of alibi. The request of defendant's attorney for more definite instruction on this point was reasonable and should have been complied with. The court doubtless refrained from instructing the jury further lest it might err by instructing as to the facts. We think, however, an instruction might have been framed so as to reach the point and yet not invade the prerogative of the jury. It does not often happen that an alleged crime is narrowed to a particular hour; often not even to a particular day. But, when it is so narrowed, the time, even the hour, may become important. It is true, as urged by the attorney general, that the jury may have disbelieved defendant's witnesses, and believed the prosecuting witness. Had the jury reached the verdict after sufficient and correct instructions it could not have been dis-

turbed, for the jury had the right to judge of the credibility of the witnesses as well as of the weight of the evidence.

The judgment and order denying a new trial are reversed.

Buckles, J., and McLaughlin, J., concurred.