[Civ. No. 31096. First Dist., Div. Two. Feb. 26, 1974.]

MARSTON STONE UHL, Plaintiff and Respondent, v.
THE MUNICIPAL COURT FOR THE CENTRAL JUDICIAL
DISTRICT OF MARIN COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Appellant.

**Counsel**

Douglas J. Maloney, County Counsel, and George J. Silvestri, Jr., Deputy County Counsel, for Real Party in Interest and Appellant.

Harold J. Truett, Public Defender, and Peter J. Muzio, Deputy Public Defender, for Plaintiff and Respondent.

No appearance for Defendant and Respondent.

**Opinion**

**TAYLOR, P. J.**—This appeal from an order granting the public defender's petition for a writ of mandamus raises a question of first impression: whether the assertion of a conflict of interest with an unnamed client in another proceeding by an attorney is sufficient to permit his withdrawal from a case to which he has been appointed. Appellant maintains that the attorney should be required to make a showing of the facts and circumstances giving

rise to the asserted conflict or prejudice. We have concluded, on the basis of the right to untrammeled and unimpaired assistance of counsel guaranteed by the state and federal Constitutions and its necessary corollary, the confidentiality of the attorney-client relationship, the Canons of Ethics and the applicable California law, that the order[1] granting the petition for writ of mandamus must be affirmed.

The basic facts are not in dispute. On September 16, 1971, a criminal complaint was filed charging respondent, Marston S. Uhl, with a violation of Penal Code section 459. On October 5, Uhl was referred to the public defender's office for a determination of his eligibility for its services. After he was interviewed by a deputy, Mr. Briggs, it was determined that Uhl was financially eligible for representation by the public defender. However, after taking a factual statement from Uhl, Briggs formed the opinion that a conflict of interest existed between Uhl and another client then being represented by the public defender's office. Briggs duly noted the existence of the conflict in Uhl's file.

The following day, October 6, Uhl was present in the Municipal Court of the County of Marin, Central Judicial District, with another deputy public defender, Mr. Muzio, who indicated that a conflict of interest existed and requested that the court appoint private counsel to represent Uhl.[2] Muzio did not elaborate on the nature of the conflict and the court thereafter appointed the public defender to represent Uhl.

On October 8, 1971, the public defender filed, on behalf of Uhl, a petition for writ of mandate to compel the court to appoint private counsel to represent Uhl. After a hearing, the superior court found that since the public defender did not disclose the nature of the relationship out of which the conflict arose nor state that the mere disclosure of the relationship would, in fact, require a breach of the confidential relationship with the existing client, the municipal court was not required to appoint separate counsel. The superior court, however, directed the municipal court to rehear Uhl's request for appointment of separate counsel. At the rehearing on

---

[1]Although the notice of appeal refers to a "judgment" entered on December 6, 1971, the document is an order granting a peremptory writ of mandate.

[2]Penal Code section 987.2 (§ 987a renumbered § 987.2 by Stats. 1970, ch. 723, § 1, p. 1350) provides in part: "In any case in which a person . . . desires but is unable to employ counsel and in which counsel is assigned in the . . . municipal court . . . to represent such a person in a criminal . . . proceeding . . . such counsel . . . in a case in which the court finds that because of conflict of interest or other reasons the public defender has properly refused to represent the person accused, shall receive a reasonable sum for compensation and for necessary expenses . . . to be paid out of the general fund of the county."

November 24, 1971, Muzio again appeared with Uhl and reiterated the existence of a conflict of interest between Uhl and another client whom the public defender's office was then representing. Muzio also added that he could not disclose the nature of the relationship that gave rise to the conflict without breaching the confidence of the existing client. After the court again denied the request for appointment of separate counsel, the superior court issued its peremptory writ of mandate[3] directing the appointment of separate counsel and this appeal ensued.

Citing *Glasser* v. *United States,* 315 U.S. 60 [86 L.Ed. 680, 62 S.Ct. 457], the California Supreme Court has held that the refusal of a trial court to grant to a defendant a continuance to secure separate counsel where a conflict of interest is asserted is reversible error *(People* v. *Robinson,* 42 Cal.2d 741 [269 P.2d 6]). In *Robinson,* the People argued that the record failed to reflect any diversity of interest between the defendants. The court, however, held that, apart from any factual conflict, a defendant is entitled to the undivided loyalty and untrammeled assistance of his own counsel (p. 748). This principle was reiterated in *People* v. *Douglas,* 61 Cal.2d 430, at page 437 [38 Cal.Rptr. 884, 392 P.2d 964]: " '. . . The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.' "

More recently, in *People* v. *Chacon,* 69 Cal.2d 765 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454], the California Supreme Court reversed a defendant's conviction based on the ineffective assistance of counsel who represented the codefendants, despite the fact that neither the defendant nor his attorney had raised the claim of conflict of interest in the trial court.

We have found no case on all fours with the instant one, where the precise question is whether any showing of the facts and circumstances that give rise to the potential conflict or prejudice is required, or whether the court can rely on the assertion of the attorney.[4] We also note that most

---

[3]The writ and the prosecution of Uhl were stayed pending the outcome of this appeal.

[4]Like the federal courts, we make no distinction between appointed or retained counsel as we think the underlying constitutional principles and the confidentiality of the attorney-client relationship apply equally to both *(United States* v. *Foster* (1st Cir. 1972) 469 F.2d 1, fn. 2 at p. 4; *Lollar* v. *United States* (1967) 376 F.2d 243, 245 [126 App.D.C. 200]).

In this state, the office of the public defender is a statutory one, and the public defender is a county employee charged with defending persons accused of criminal activities. Accordingly, a public defender is not free, unlike a private attorney, to refuse to represent any defendant who qualifies for representation by the county office. In every other respect, however, a public defender deals with his clients and with the court on the same basis as any attorney in private practice.

of the reported cases relate to multiple defendants in the same criminal proceedings rather than separate ones. To us, however, this distinction (like that between appointed or retained counsel) is of no substance in relation to the basic important rights involved.

Appellant urges us to adopt a rule analogous to that of the First, Second, Eighth and Ninth Circuits (derived from *Glasser*), namely, that no reversible error is committed in assigning a single attorney to represent two or more codefendants in a pending criminal action, absent evidence of an *actual conflict* of interest or evidence pointing to a substantial possibility of a conflict of interest between the codefendants (*United States* v. *Foster* (1st Cir. 1972) 469 F.2d 1, 5;[5] *United States* v. *Wisniewski* (2d Cir. 1973) 478 F.2d 274, 281; *Austin* v. *Erickson* (8th Cir. 1973) 477 F.2d 620, 623; *Duran* v. *United States* (9th Cir. 1969) 413 F.2d 596, 599; *Carlson* v. *Nelson* (9th Cir. 1971) 443 F.2d 21, 22).

However, in *People* v. *Chacon,* 69 Cal.2d 765, *supra,* at page 776, our Supreme Court noted that this state follows the rule of the Fourth and D.C. Circuits, likewise based on *Glasser, supra, requiring the appointment of separate counsel for each defendant initially where there is a basis for an "informed speculation" that a defendant was prejudiced by being represented by the same counsel (Ford* v. *United States* (1967) 379 F.2d 123 [126 App.D.C. 346];[6] *Lollar* v. *United States* (1967) 376 F.2d 243 [126 App.D.C. 200];[7] *Sawyer* v. *Brough* (4th Cir. 1966) 358 F.2d 70).

We also note that when faced with a question more analogous to the

[5]The court in *Foster* noted at page 5: "For the time being, at least, we leave to the discretion of the trial court the exact time and form of the inquiry. There may be unusual circumstances where, to avoid the possibility of prejudicial disclosures to the prosecution, the court may exercise its discretion to pursue the inquiry with defendants and their counsel on the record but in chambers."

[6]The court (J. Skelly Wright) noted at pages 125-126: "While, as shown by our disposition of this case, we are not persuaded that all consideration of prejudice is irrelevant where co-defendants are represented by the same counsel, Ford's economic conflict argument is not without force. Moreover, the burden placed on the trial judge by the Act, to decide before trial whether separate counsel for co-defendants are required, is an exceedingly onerous one. Under the circumstances, we have concluded that, in order to comply with the Criminal Justice Act, 18 U.S.C. § 3006A(b), as well as the teaching of *Glasser, Campbell* and *Lollar,* hereafter separate counsel for each co-defendant should be appointed initially in every case, with an instruction that if counsel conclude, after fully investigating the case and consulting with their clients, that the interests of justice and of the clients will best be served by joint representation, this conclusion with supporting reasons shall be communicated to the court for such on-the-record disposition as the court deems appropriate in the circumstances."

[7]The Third Circuit apparently follows a middle course between the others (*Government of Virgin Islands* v. *Hernandez* (3d Cir. 1973) 476 F.2d 791).

instant situation than the rules discussed above, the Second Circuit said in *United States* v. *Armone* (2d Cir. 1966) 363 F.2d 385, at pages 405-406: "Viscardi also claims that he was prejudiced by sharing counsel with the two Armones and Grammauta and that the trial court's failure to apprise him of 'the hazards inherent in sharing an attorney with the Armones and Grammauta' was error. The short answer to Viscardi's contention is that almost six months prior to trial, the government requested the court to inquire into the existence of a possible conflict of interest. The following interchange between government counsel and counsel for Viscardi, the two Armones, and Grammauta appears on the record:

" 'Mr. Jacobs: . . . [Y]our Honor, this case was on on Monday and at that time the government stated it wished Mr. Lewis in court because the situation in this case is a novel situation, Mr. Lewis representing four defendants in a conspiracy case, and I wish the Court to ask Mr. Lewis that if after being in this case now for over a month he knows of any conflict or any reason why he couldn't represent these four defendants.

" 'The Court: I assume he doesn't or he would have brought it to the attention of the Court.

" 'Mr. Lewis: That's right; I discussed it with my clients and they have advised me they feel there is no conflict.'

"Viscardi relies upon Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), and Campbell v. United States, 352 F.2d 359 (D.C.Cir. 1965). *Nothing in Glasser requires the government or the court to take further steps after receiving such an assurance from an officer of the court.* In *Campbell*, where a single attorney was retained by two defendants, the court reversed the conviction of one defendant because the trial judge did not inquire into whether the defendants knowingly accepted the risk of sharing defense counsel. We need not now decide how much of the *Campbell* case we accept as law in this circuit. We simply hold that the trial judge's inquiry of counsel as to possible conflict of interest in this case sufficed to protect any rights Viscardi may have had in the matter. *The court must be allowed to accept an attorney's representations in matters of this kind, at least absent unusual circumstances.*" (Italics added.)

Returning to California authorities, *People* v. *Gallardo,* 269 Cal.App.2d 86 [74 Cal.Rptr. 572], is helpful here. In *Gallardo,* the codefendants were jointly charged with several counts of robbery and represented by the public defender. At the outset of the trial, the public defender advised the court that while the codefendants thought there was a conflict, he did not agree. The court did not ask the codefendants about the nature of the conflict but

merely called into question the competence of the public defender and denied the request for appointment of separate counsel. On appeal, the conviction was reversed because, in fact, there was a conflict. One defendant was more heavily involved in the offenses charged than the other and the trial court had not advised the codefendants of the situations that would give rise to the right to separate counsel. The court, referring to *People* v. *Chacon,* 69 Cal.2d 765, 776 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454], and its citation of *Lollar* v. *United States,* said at pages 89 and 90: "The facts of *Lollar* v. *United States,* to which our Supreme Court refers, indicate that a minimal showing of a right to separate representation leads to reversal unless the People successfully shoulder the burden imposed on them by *Chapman* v. *California,* 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-711, 87 S.Ct. 824, 24 A.L.R.3d 1065], and convince us that the error was harmless beyond a reasonable doubt. It seems more than fair to place this burden on the People in cases such as the present, because it is usually the very error of not appointing separate counsel which makes it so difficult for the defendants to point to tangible evidence of prejudice.

"Lollar was an admitted homosexual who himself had testified that it was particularly annoying to him to be referred to as a man. Nevertheless his conviction was reversed because his co-defendant, while testifying, called him 'Miss Lollar,' 'Miss Lolly,' 'she' and 'Sister.' This, said the court, may have startled the jurors. Also, separate counsel might have decided not to permit Lollar to testify. Finally the joint attorney twice confused Lollar with his codefendant.

"Obviously this is very, very little on which to base a reversal, but as the court recognized, 'informed speculation' is all that we have to work with in these cases. All we can see, it said, is 'the tip of the iceberg.' (376 F.2d 243, 246.) To require more than that 'tip' would be to ignore the teaching of *Chapman.*

"We must also keep in mind that the law does not require the showing of an actual conflict. A potential one suffices. [Citation.] We must consider the 'innumerable tangible factors' which may always lurk in the wings when there is a disparity of involvement between codefendants. [Citation.]"

Similarly, in *People* v. *Donohoe,* 200 Cal.App.2d 17 [19 Cal.Rptr. 454], a single attorney was appointed to represent two defendants charged with robbery. Prior to the entry of the plea, the attorney moved for the appointment of separate counsel on grounds of a conflict of interest. The motion was denied and both defendants were convicted. On appeal, the People urged that a declaration of conflict of interest must specify the nature of

the conflict. In reversing the convictions, this court (Division One, Sullivan, J.) rejected this argument, stating at page 29: "The Attorney General contends that any objection to counsel based upon conflicting interests of the defendants must specify 'what the purported conflict of interest comprises.' *We find no such requirement in the cases.* In the *Glasser* case, there was but a general allusion to the conflict. (315 U.S. at p. 68 [86 L.Ed. at p. 698].) In the *Lanigan* case, the objection was limited to a statement the interests 'might conflict.' (22 Cal.2d at p. 572.) In the *Kerfoot* case, although the judge, prior to the first trial, had felt there was a conflict of interest, he was of a different opinion prior to the second trial. Upon the proceedings with respect to appointment of counsel, hereinabove detailed by us, Demes, the appellant, so far as the opinion discloses, made only a general objection that there was a conflict of interest. (184 Cal.App.2d 626-628. See also *People* v. *Robinson,* 42 Cal.2d 741, 743 [269 P.2d 6], where there was only a suggestion that 'there might be a diversity of interest.') In the case before us, Mr. Aye did not confine himself to a bare objection of the possibility of a conflict. He stated that he had carefully gone over the transcript and had examined the statements given by Mrs. Hinson and stated positively that there would be a definite conflict of interest. We feel his objection was sufficient." (Italics added.)

In *People* v. *Odom,* 236 Cal.App.2d 876 [46 Cal.Rptr. 453], the appellate court upheld a trial court's refusal to appoint private counsel where the motion was not made until a week before trial, did not specify the nature of the conflict, *the public defender representing the defendant stated he did not think a conflict existed, and the record of the trial disclosed no actual conflict of interest.* The court, however, at page 878, outlined some of the situations where a conflict of interest may arise, as follows: "Conflicts of interest among codefendants may arise when it would profit one defendant to attack the credibility of another [citation]; when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another [citation]; when one defendant has a record of prior felony convictions and the others do not [citation]; when the defenses of codefendants are factually inconsistent [citation]; or when appointed counsel believes a conflict of interest *may* exist [citations]." (Italics added.)

In *People* v. *Perry,* 242 Cal.App.2d 724 [51 Cal.Rptr. 740], three codefendants were represented by the same attorney. On the day of trial the attorney asked to be relieved of the duty to represent Perry as he had learned only on the previous day that a conflict of interest existed between Perry and his two codefendants. The trial court refused to relieve the attorney

and the matter proceeded to trial. After the jury was impaneled, all three codefendants pled guilty. On the third day of trial, the attorney again declared a conflict but did not provide any details. Thereafter, the trial proceeded but the attorney acted only in an advisory capacity. In reversing Perry's conviction on appeal, this court (Division Three) noted at page 729: "5. It must be that *in many cases it becomes impossible for the lawyer to explain the conflict of interest because he cannot divulge the secrets of his clients."* (Italics ours.)

*People* v. *Kerfoot,* 184 Cal.App.2d 622 [7 Cal.Rptr. 674], is to the same effect. In *Kerfoot,* the trial court appointed two attorneys to represent codefendants to a homicide charge after the public defender declared that there was a conflict of interest which prevented him from effectively representing either one. The trial ended in a hung jury. Both attorneys asked to be relieved and the trial court stated that it had heard the first trial and did not believe there was a conflict and subsequently appointed the public defender to represent both defendants at the second trial. Both defendants declared there was a conflict of interest and refused the services of the public defender. On the day of trial, the defendants reiterated their belief in a conflict and requested private counsel; the public defender stated there was a possible conflict. The court then called Mr. Edwards, the attorney who had represented one of the defendants at the first trial and asked whether a conflict existed. After Edwards gave a noncommital answer, the motion for separate counsel was denied. In reversing the conviction, the appellate court commented as follows on the trial judge's questioning of Edwards, at pages 644-645: "It is true that if no adverse interest *exists* and *none is claimed,* the representation of more than one defendant by a single attorney is permissible. [Citations.]

"In *People* v. *Meacham,* 84 Cal.App.2d 193 [190 P.2d 262] [contrary to the situation in the instant case], the court made no inquiry to ascertain if there might be a conflict, no objection was made to the trial judge and there was nothing to indicate that there was any conflict." The court, nevertheless, commented as follows:

"When the defendants' defense is slighted for fear of prejudicing a codefendant (barring a waiver as in *People* v. *Rocco,* 209 Cal. 68 [285 P. 704] and *People* v. *Fernandez,* 301 N.Y. 302 [93 N.E.2d 859]) it is error to have one counsel for more than one defendant. [Citations.]

"In the case before us, had each defendant had a separate attorney each defendant would have been afforded his constitutional rights.

"To say that the appellant here was afforded due process of law and

that he was fairly treated is in effect to substitute artificial reasoning and mechanical jurisprudence for fundamental rights. *We must look to the realities of the situation and not just to a semiformal compliance with procedural rules.*" (Italics added.)

■ As indicated by our above review of existing authorities, in most of the reported cases, the conflict arose between codefendants in the same proceedings and the precise nature of the facts giving rise to the conflict was on the record for the benefit of the appellate court. In the instant case, these facts are not known, but we cannot agree with the position of the appellant that a showing must be made, initially, where the attorney gives his assurance to the trial court that there is a potential conflict.

Furthermore, the mere fact that the conflict exists as to defendants in different proceedings is not a sufficiently significant distinction. Separate and distinct proceedings can pose the same problems of constitutional and ethical conflicts of interest. This fact was recognized in *People* v. *Peters,* 7 Cal.App.3d 154 [86 Cal.Rptr. 521], where private counsel was appointed to represent two defendants based on the public defender's statement that representations would create a conflict on the basis of a previously assigned case (at p. 160).

Furthermore, it does not require an unusual exercise of judicial imagination to pose a number of situations that raise serious constitutional and ethical conflicts where a single attorney is appointed to represent defendants in different proceedings. The Rules of Professional Conduct of the State Bar of California and the Canons of Ethics of the American Bar Association not only strongly support the constitutionally guaranteed right to effective counsel but also create an independent obligation on the part of lawyers, even in civil cases, to refrain from representing persons whose interests conflict with those of an existing client (*Galbraith* v. *The State Bar,* 218 Cal. 329 [23 P.2d 291]).

Significantly, in *Galbraith,* the attorney no longer represented the original client, whereas in the instant case, the public defender informed the municipal court that the conflict of interest existed between his representation of Uhl and a previously assigned case. Thus, *Galbraith* demonstrates that the municipal court's interpretation of "simultaneous representation" in *Glasser* v. *United States, supra,* page 70 [86 L.Ed. page 699], as being restricted to representations of codefendants at the same proceeding cannot be supported. Clearly, a lawyer who is required to represent an individual in violation of his professional ethics is impaired in his ability

to provide effective representation. If a conflict of interest prohibited by the Rules of Professional Conduct of the State Bar and Canons of Ethics can exist between civil clients in two different proceedings, it follows that a conflict can likewise exist between criminal defendants in different proceedings.[8]

The order appealed from is affirmed.

Kane, J., and Rouse, J., concurred.

---

[8]*State* v. *Mullins* (1971) 26 Ohio App.2d 13 [55 Ohio Ops.2d 30, 268 N.E.2d 603], is totally inapposite as there the court simply held, at page 606, that the attorney-client relationship can offer no shield to either the client or attorney if the client has been engaged in a plan to commit a *crime in the future*.