[L.A. No. 31666. Sept. 6, 1983.]

MICHAEL A. LEVERSEN, Petitioner, v.
THE SUPERIOR COURT OF ORANGE COUNTY, Respondent;
THE PEOPLE et al., Real Parties in Interest.

**COUNSEL**

Michael A. Leversen, in pro. per., Robert P. App, Giles, Stewart & Barnett and Giles, Stewart, Barnett & Harmon for Petitioner.

No appearance for Respondent.

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, William W. Bedsworth and Connie S. Ferris, Deputy District Attorneys, and William Morrissey, under appointment by the Supreme Court, for Real Parties in Interest.

**OPINION**

**GRODIN, J.**—Petitioner is counsel for defendant Walter Gibbs in a criminal trial that we have stayed pending this proceeding. He seeks a writ of mandate directing the trial court to allow him to withdraw as counsel because of a conflict of interest stemming from confidential information re-

ceived in the course of his firm's representation, in other proceedings, of a witness, Richard Crisan, called by codefendant Velma Hogan.[1]

The question presented is what standards govern disposition of a motion made during a criminal trial by defendant's attorney to be relieved as counsel because of a conflict of interest arising out of the attorney's representation of another client in a different proceeding when the nature of the conflict is unclear and, according to counsel, cannot be clarified without breaching the other client's confidences.

### I.

Gibbs and Hogan were jointly charged with felonies in connection with a jewelry store robbery on July 30, 1981. As counsel for Gibbs the trial court appointed a law firm that was under contract with Orange County to represent indigent defendants as to whom the public defender declared a conflict of interest. Petitioner was an employee of that firm and, as such, represented Gibbs. Hogan had separate counsel.

The case was called for trial on March 9, 1982, but jury selection did not commence until the afternoon of March 11. On March 10, both defendants moved for severance of their trials, one ground for the motion being inconsistency of their defenses. The court permitted counsel to support their motions by presenting testimony in lieu of affidavits demonstrating inconsistency. Hogan then testified that though she had participated in the crimes, she was forced to do so by Gibbs and two others, Linda Bogan and Rick Serano. Gibbs testified he was not present at the scene of the crime, but his testimony was stricken after he refused on advice of counsel to submit to cross-examination concerning his exact whereabouts at the time. Severance was denied.

Trial testimony was presented March 15 through 18. After the prosecution rested, Hogan again testified that she had been coerced to participate by Gibbs, Rick Serano, and Linda Bogan. Gibbs testified and presented two other alibi witnesses. Petitioner then announced that his last alibi witness, a municipal court clerk, was ill, and it was agreed that Hogan might call a rebuttal witness out of order. At her counsel's request, Richard Crisan was brought from jail under subpoena.

Soon after Crisan arrived, petitioner informed the court that he had just learned from his investigator that his office represented Crisan in other matters and that if Crisan were called as a witness, petitioner would have to

---

[1] The trial was stayed as to Gibbs only, not as to Hogan.

declare a conflict of interest and move for a mistrial. Crisan, advised by specially appointed counsel, told the court he would claim his privilege against self-incrimination and refuse to testify. Petitioner nonetheless reiterated that he would ask to be relieved as counsel simply upon Crisan's being called to the stand. He explained that in connection with his office's representation of Crisan he had "seen the interview" and "read the police report with regard to Mr. Crisan." "We have meetings daily with regard to the cases that we have. So I have heard general conversation with regard to his case for a period of time. I just didn't connect the name."

The court then elicited from Gibbs that he understood his right to waive a conflict of interest but that if one were to exist he would "disregard [petitioner] as my attorney and ask to be appointed another attorney at the trial." The court stated it intended to deny the motion because Crisan was not a codefendant and his refusal to testify would eliminate any need for petitioner to cross-examine him.

In front of the jury, Crisan took the stand, gave his name, and refused on the ground of self-incrimination to state whether he was present at the time and place of the charged crimes. Hogan resumed the stand and testified that Crisan was the person she had referred to in her direct testimony as the Rick Serano who, along with Gibbs, had forced her to participate. The court told petitioner, "You may examine," to which petitioner replied that he was "not able to examine."

The jury was excused and petitioner reasserted a conflict of interest, explaining that (1) Crisan "has been asserted as an uncharged codefendant in this particular case," (2) petitioner's office was representing Crisan in a similar jewelry store robbery prosecution, and (3) petitioner might have to use confidential information in calling rebuttal witnesses. The court denied petitioner's motion to be relieved, declaring its inability to see any possible conflict in light of the facts that Crisan was not a defendant and had declined to testify and that it was too late in the trial to recall Gibbs for examination on matters testified to earlier. The court ordered petitioner "as an officer of this court to proceed in your examination if you feel it is appropriate to cross-examine the witnesses that are called," but then agreed to hear further argument on March 22.

At the March 22 hearing petitioner appeared along with two other attorneys in his firm and submitted a "Memorandum of Law re Conflict of Interest and in Support of [petitioner's] Motion to Be Relieved as Counsel and Defendant Gibbs' Motion for a Mistrial." The memorandum was signed by four of the firm's attorneys, including those present, who represented "as officers of the court" that "a conflict of interest has arisen between

other clients of the firm and Defendant Gibbs" and that "they cannot adequately or fully represent Gibbs without violating the privilege of other clients." The memo stated they would immediately ask to be relieved as Crisan's counsel in the other matters in which they represented him, and at the hearing counsel stated that those requests had been granted. The memo further said that the firm "possesses privileged information from a client other than Gibbs germane to Gibbs' trial; counsel cannot discuss that information with Gibbs without violating the privilege, and cannot independently pursue it without adversely affecting the interests of another client and further violating the privilege. [¶] While a conflict of interest arose as soon as Hogan's counsel called Crisan to the stand, the full extent of that conflict, and the relevance of privileged information in the possession of counsel, did not become apparent until Crisan was identified as an uncharged crime partner in this robbery."[2]

After submission of petitioner's memorandum, the prosecutor introduced a police report that she asserted had been in petitioner's hands since January 1982. The report, dated August 1, 1981 (two days after the robbery), listed Hogan, Gibbs, Crisan, and Linda Bogan as suspects and stated (on the last page) that the district attorney would be requested to amend the complaint "to add the additional suspects." In a police report of July 30 that had been shown to the court at the March 10 hearing on petitioner's motion for severance it appeared that Hogan was the only suspect arrested at the scene and that after waiving *Miranda* rights she had stated that the others involved in the robbery were Gibbs, Bogan, and "Rick." The August 1 report states that using information supplied by Hogan, police had traced Rick's address to the residence of Emil Crisan, age 55. They then found Department of Motor Vehicles records of Richard Crisan, born 1954, who matched the description of Rick supplied by Hogan, and they learned that Richard Crisan had given Emil Crisan's residence as his own address in arrest bookings. Finally, the jewelry store owner selected Crisan's picture from a photographic lineup as a customer she knew as "Lee" and had encountered outside the store just before she entered and discovered the robbery in progress. Other store personnel similarly identified Crisan as Lee; they and the owner also photographically identified Gibbs as one of the robbers.

Petitioner admitted receiving the police reports before trial. He told the court that when he was first appointed to represent Gibbs in this case, he reviewed the police reports, including one with Crisan's name in it, and

---

[2]In the return to the writ the People speculate whether the memo's reference to "a client other than Gibbs" was intended to broaden the basis of the claimed conflict to include privileged information from a client other than Crisan. There is nothing further in the record to indicate that petitioner claimed, or was understood to have claimed, a conflict based on representation of anyone other than Gibbs and Crisan, and we assume that to be so.

checked files to see whether his office represented any potential witnesses, "and at the particular time we did not represent Mr. Crisan, or it was not brought to my attention." In trial testimony Hogan "gave us the name [Rick Serano] of the person who she indicated was the master-mind, and also an uncharged defendant," and said he was then in the Orange County jail. Petitioner said that on hearing this testimony, he checked the jail records and found no one of that name. Thus, he did not realize Crisan's connection with the case until Crisan was brought in as a witness.

The court reiterated its March 18 denial of petitioner's motion to be relieved and further denied the motion for mistrial. The court expressly disclaimed any doubt of the honesty of the representations made by petitioner and his firm, or of their good faith in urging their contentions.[3] The court nonetheless ruled that the showing of conflict was insufficient, declaring that it, not counsel, must be the "final arbiter" of the existence of a material conflict of interest. It stated that there was no showing that counsel had confidential information that (1) would impeach any of the trial testimony and (2) would be available to substitute counsel. It explained that if Crisan had waived his privilege and elected to testify, petitioner's motions would have been granted, but that the "main witnesses" had "already been thoroughly examined and cross examined," and the alleged conflict clearly could not affect examination of the only remaining witness known to the court—a municipal court clerk being called to testify to "seeing Mr. Gibbs on some day" and to explain "some changes in some bail slips."

Counsel said that the conflict was based on privileged information of which counsel could not reveal the nature or source "other than to tell the court it is privileged and that we feel, in accordance with our oath, that it is germane and that it creates a conflict." Counsel further asserted that a substitute attorney might "very well get the information from other sources." The court told counsel that "there has to be some clue to the court" and that here there was no basis for even a "reasonable, informed speculation" that a disqualifying conflict existed.

## II.

 It has long been established that "the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall

---

[3]The court also upheld counsel's good faith in another respect. In opposing the motions the prosecutor had insinuated that petitioner arranged with Hogan's counsel for the calling of a former client of petitioner as Hogan's witness as a means of "getting their way with regards to a severance motion when all else fails." Referring to that charge, the court said that there was no evidence petitioner or Hogan's counsel had acted improperly.

simultaneously represent conflicting interests." (*Glasser* v. *United States* (1942) 315 U.S. 60, 70 [86 L.Ed. 680, 699, 62 S.Ct. 457]; accord, *People* v. *Chacon* (1968) 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106, 34 A.L.R.3d 454].) Questions of conflicting representation violative of that principle usually arise out of an attorney's representation of more than one defendant in the same trial. ■ "[W]henever a trial court improperly requires joint representation over timely objection reversal is automatic." (*Holloway* v. *Arkansas* (1978) 435 U.S. 475, 488 [55 L.Ed.2d 426, 436, 98 S.Ct. 1173].)

In *Holloway, supra,* a public defender, appointed to represent three co-defendants accused of robbery, moved before trial that separate counsel be appointed for each defendant because of "a possibility of a conflict of interest" (*id.,* at p. 477 [55 L.Ed.2d at p. 430]) and because " 'one or two of the defendants may testify and, if they do, then I will not be able to cross-examine them because I have received confidential information from them.' " (*Id.,* at p. 478 [55 L.Ed.2d at p. 430].) The motion was denied and defendants were convicted. Reversing, the United States Supreme Court held that the trial judge's failure "either to appoint separate counsel or to take adequate steps to ascertain whether the risk was too remote to warrant separate counsel . . . deprived [defendants] of the guarantee of 'assistance of counsel'." (*Id.,* at p. 484 [55 L.Ed.2d at p. 434].)

In *Holloway,* as here, the prosecution argued that "to credit [counsel's] representations to the trial court would be tantamount to transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict and to appoint separate counsel." (*Id.,* at p. 486 [55 L.Ed.2d at pp. 435-436].) But the high court noted that to attempt to present the separate-counsel claim in more detail would confront counsel "with a risk of violating, by more disclosure, his duty of confidentiality to his clients." (*Id.,* at p. 485 [55 L.Ed.2d at p. 435].) It found these considerations persuasive: that counsel "is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop"; that defense attorneys have an obligation to advise the court of any conflict of interest; and that attorneys are officers of the court, and their representations concerning conflicts "should be given the weight commensurate with the grave penalties risked for misrepresentation." (*Id.,* at pp. 485-486, 486, fn. 9 [55 L.Ed.2d at p. 435].) Further, the trial court remains free to deal with "untimely motion[s] for separate counsel . . . made for dilatory purposes" and to "explor[e] the adequacy of the basis of defense counsel's representations regarding a conflict of interest without improperly requiring disclosure of the confidential communications of the client." (*Id.,* at pp. 486-487 [55 L.Ed.2d at p. 436].) Even before *Holloway,* this court had required that great weight be accorded trial counsel's

assertion of a conflict of interest that would impair counsel's representation of multiple defendants. (*People* v. *Douglas* (1964) 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Robinson* (1954) 42 Cal.2d 741 [269 P.2d 6]; *People* v. *Lanigan* (1943) 22 Cal.2d 569 [140 P.2d 24, 148 A.L.R. 176]; see *People* v. *Donohue* (1962) 200 Cal.App.2d 17, 27 [19 Cal.Rptr. 454].)

Petitioner here, however, asserts not a conflict of interest between codefendants whom he simultaneously represents but a conflict between his duty to provide adequate assistance of counsel to defendant Gibbs and his professional fiduciary obligations arising out of his former representation of Crisan in different proceedings. ■ An attorney is forbidden to use against a former client any confidential information that was acquired during that client relationship. (*Galbraith* v. *The State Bar* (1933) 218 Cal. 329, 333 [23 P.2d 291]; *Wutchumna Water Co.* v. *Bailey* (1932) 216 Cal. 564, 573-574 [15 P.2d 505]; Bus. & Prof. Code, § 6068, subd. (e) (preserving client's secrets); Rules Prof. Conduct, rule 4-101 (employment adverse to former client), rule 5-102 (B) (representation of conflicting interests).) Moreover, the attorney has a duty to withdraw, or apply to a court for permission to withdraw, from representation that violates those obligations. (Rules Prof. Conduct, rule 2-111(B)(2).) So important is that duty that it has been enforced against a defendant's attorney at the instance of his former client (who was also a codefendant) even at the expense of depriving the defendant of his choice of counsel. (*Yorn* v. *Superior Court* (1979) 90 Cal.App.3d 669 [153 Cal.Rptr. 295].)

■ Conflicts of interest based on those obligations to clients in different proceedings, as well as conflicts arising out of simultaneous representation of codefendants, may impair a defendant's constitutional right to assistance of counsel. In *Uhl* v. *Municipal Court* (1974) 37 Cal.App.3d 526 [112 Cal.Rptr. 478], a public defender declined a municipal court's appointment as counsel, declaring a conflict with representation of another, unnamed client and explaining that "he could not disclose the nature of the relationship that gave rise to the conflict without breaching the confidence of the existing client." (*Id.*, at p. 529.) The Court of Appeal affirmed the superior court's order directing the municipal court to appoint different counsel, holding that the same deference must be given counsel's declaration of conflicts inherent in representation of defendants in different proceedings as to a declaration of conflict between defendants in the same proceeding. "[T]he mere fact that the conflict exists as to defendants in different proceedings is not a sufficiently significant distinction. Separate and distinct proceedings can pose the same problems of constitutional and ethical conflicts of interests." (*Id.*, at p. 535; see *People* v. *Perry* (1966) 242 Cal.App.2d 724 [51 Cal.Rptr. 740] (request to be relieved as trial counsel

for conflict based on representation of codefendants who had pleaded guilty).) We agree.[4]

■ Under these principles, respondent court failed to give sufficient weight to the assertions of petitioner and members of his firm that their continued representation of Gibbs was precluded by a conflict of interest based on confidential information received during representation of Crisan. The court ruled that conflict had not been established because (1) there was no evidence of the nature of the confidential information or of how it would impeach any witness, and (2) any conflict could not adversely affect Gibbs since there was no showing that the confidential information would be available to substitute counsel or could be used to Gibbs' advantage, in light of Crisan's refusal to testify and the late stage of the trial.

The facts before the court sufficiently corroborated petitioner's representation of a conflict. Hogan's testimony indicated that the person she later identified as Crisan was the "mastermind" of the robbery charged against Gibbs. One of the matters in which petitioner's firm had been appointed to represent Crisan was another, similar jewelry store robbery. It is not implausible that Crisan had furnished information that might lead to evidence, apart from Crisan's testimony, that would tend to exculpate Gibbs even though perhaps incriminating Crisan. Another possibility might have been to seek leniency for Gibbs in exchange for testimony against Crisan. Petitioner's duty not to use Crisan's confidences against him prevented petitioner from even discussing these or other possibilities with his client, Gibbs, let alone revealing them in open court. Having accepted the good faith and honesty of petitioner's statements on the subject, the court was bound under the circumstances to rule that a conflict of interest had been sufficiently established.[5]

There was also sufficient indication from the circumstances before the court to establish a danger that the conflict would adversely affect petitioner's performance as Gibbs' lawyer. Crisan's refusal to testify did not elim-

---

[4]Statements in *People* v. *Pineda* (1973) 30 Cal.App.3d 860, 864-865 [106 Cal.Rptr. 743], indicating that a conflict of interest denying the constitutional right to effective counsel may arise only out of simultaneous representation of codefendants, are disapproved.

[5]We accordingly find it unnecessary to consider the People's contention, first raised in supplementary briefing shortly before oral argument, that the trial court should have requested or ordered petitioner to disclose confidential information underlying the conflict in an *in camera* hearing. The prosecutor argued to the trial court that petitioner should have known from police reports furnished before trial that Crisan was the "Rick" whom Hogan accused of forcing her to participate in the robbery. But petitioner represented to the court that he did not in fact realize Crisan's connection with the case until Hogan called Crisan as a witness, and the court accepted that representation as honest and made in good faith. Gibbs' right to conflict-free representation is not to be forfeited simply on account of counsel's oversight.

inate all likelihood that substituted counsel, alerted to the possibility of additional evidence helpful to the defense, would ferret it out. Nor was the trial necessarily too far along for new evidence to be useful. It is true that Gibbs had already testified and petitioner had announced only one relatively minor witness yet to be called for direct examination. On the other hand, petitioner had not yet rested Gibbs' direct case, so it remained legally possible to call additional witnesses, or perhaps, on sufficient showing, to recall witnesses who had already testified (Evid. Code, §§ 774, 778; see *People* v. *Manchetti* (1946) 29 Cal.2d 452, 460-462 [175 P.2d 533]). Moreover, there remained the tasks of closing argument and, if Gibbs were convicted, of posttrial proceedings such as sentencing. In those matters Gibbs was entitled to "the undivided loyalty and untrammeled assistance of counsel of his own choice," free of any reservations or irresolution stemming from concerns over professional obligations toward Crisan. (See *People* v. *Douglas, supra,* 61 Cal.2d 430, 438; *People* v. *Robinson, supra,* 42 Cal.2d 741, 748; *People* v. *Lanigan, supra,* 22 Cal.2d 569, 577.)

Thus, petitioner's good faith representations to the court, coupled with the evidence in the record and the posture of the trial, established as a matter of law that to deny petitioner's motion to be relieved would deprive Gibbs of his constitutional right to assistance of counsel free from any conflict of interest adversely affecting counsel's performance.

Let a writ of mandate issue, directing respondent court to vacate its order denying petitioner's motion to be relieved as counsel and to make an order granting the motion.

Bird, C. J., Mosk, J., Richardson, J., Kaus, J., Broussard, J., and Reynoso, J., concurred.