[No. G001746. Fourth Dist., Div. Three. Feb. 19, 1986.]

THE PEOPLE, Plaintiff and Respondent, v.
WALTER GIBBS, Defendant and Appellant.

COUNSEL

Richard Jay Moller, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Jay M. Bloom, Pat Zaharopoulos and Steven H. Zeigen, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**WALLIN, J.**—Walter Gibbs and Velma Hogan were jointly tried for felony offenses arising out of a jewelry store robbery. A pretrial motion to sever their trials was denied. During trial, Hogan surprised Gibbs by testifying

she committed the offenses under duress from Gibbs and his confederates. Gibbs sought a mistrial because Hogan's defense was inconsistent with his alibi. To complicate matters, Gibbs' counsel developed a conflict of interest during trial and sought to be relieved. Gibbs' motions were denied but his trial was stayed while he sought appellate relief. Hogan's jury trial proceeded and concluded with guilty verdicts.

Eighteen months later, the Supreme Court issued a writ of mandate directing the trial court to grant Gibbs' counsel's motion to be relieved. (*Leversen* v. *Superior Court* (1983) 34 Cal.3d 530 [194 Cal.Rptr. 448, 668 P.2d 755].) A new attorney was appointed to represent Gibbs. The trial court invited a mistrial motion, and indicated an inclination to grant the motion. Gibbs opted to proceed with the trial. The same jury was reconstituted and Gibbs changed his mind: he now desired a mistrial. The trial court denied that renewed motion and, 21 months after the trial had been recessed, it was resumed and proceeded to verdict. Gibbs was convicted on all counts.

Gibbs contends the court erred in denying his mistrial motions, and alternatively, in not declaring a mistrial sua sponte. He posits several complaints within this general topic: (1) a mistrial was *required* after counsel was relieved; (2) he was denied the effective assistance of counsel because his attorney was not present for all proceedings; (3) he was denied his constitutional right to be present for all proceedings because his jury heard evidence in Hogan's trial after his case had been severed and while he was not present; (4) the resultant procedural morass denied him an impartial jury; and (5) any waiver of his right to a mistrial was neither knowing, voluntary, nor intelligent, and therefore not effective.

■ The Attorney General contends Gibbs relinquished his right to litigate all of these complaints when he waived his right to a mistrial before the jury had been reconstituted. He also argues that waiver was knowing, voluntary and intelligent. While the waiver question is thought-provoking, we are more concerned with the effect of Gibbs' renewed motion for mistrial thereafter. Three months after Gibbs had "waived" his right to a mistrial, he affirmatively moved for a mistrial. The court denied that motion as untimely. Therein lies the error.

■ A criminal defendant has both a state and federal constitutional right not to be placed twice in jeopardy for the same offense. (U.S. Const., 5th Amend.; Cal. Const., art. I, § 15.) Discharging a jury after jeopardy has attached but before a verdict has been reached is the legal equivalent of an acquittal, and bars retrial unless the accused consented to the mistrial or legal necessity required it. (*Larios* v. *Superior Court* (1979) 24 Cal.3d 324,

329 [155 Cal.Rptr. 374, 594 P.2d 491]; *People* v. *Rojas* (1975) 15 Cal.3d 540, 545 [125 Cal.Rptr. 357, 542 P.2d 229, 92 A.L.R.3d 1127]; *Paulson* v. *Superior Court* (1962) 58 Cal.2d 1, 5 [22 Cal.Rptr. 649, 372 P.2d 641]; *Jackson* v. *Superior Court* (1937) 10 Cal.2d 350, 352-356 [74 P.2d 243, 113 A.L.R. 1422].) When the defendant requests the jury be discharged—moves for a mistrial—he is affirmatively stating he gives up any claim another trial would place him twice in jeopardy. (*People* v. *Hathcock* (1973) 8 Cal.3d 599, 613-614 [105 Cal.Rptr. 540, 504 P.2d 476], overruled on other grounds in *People* v. *Green* (1980) 27 Cal.3d 1, 33 [164 Cal.Rptr. 1, 609 P.2d 468].)

Federal cases interpreting the federal constitutional bar to double jeopardy are instructive, even though the Fifth Amendment protection only creates minimum standards and the California Constitution affords greater protection (*Curry* v. *Superior Court* (1970) 2 Cal.3d 707, 716 [87 Cal.Rptr. 361, 470 P.2d 345]). For example, the United States Supreme Court has recognized the defendant has a "Hobson's choice" when faced with either judicial or prosecutorial error which may prejudice his case. (*United States* v. *Dinitz* (1976) 424 U.S. 600, 608-609 [47 L.Ed.2d 267, 274-275, 96 S.Ct. 1075].) "The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain *primary control* over the course to be followed in the event of such error." (*Ibid.*, italics added.) "Indeed, even when a palpably prejudicial error has been committed a defendant may have valid personal reasons to prefer going ahead with the trial rather than beginning the entire process anew, such as a desire to minimize the embarrassment, expense, and anxiety . . . . These considerations are peculiarly within the knowledge of the defendant, not the judge, and the latter must avoid depriving the defendant of his constitutionally protected freedom of choice . . . ." (*Curry* v. *Superior Court, supra,* 2 Cal.3d at p. 717.)

There is no debate the substitution of counsel before closing argument entitled Gibbs to a mistrial. (*People* v. *Manson* (1976) 61 Cal.App.3d 102, 197-203 [132 Cal.Rptr. 265].) In fact, the problem probably reached the level of legal necessity which would preclude any double jeopardy claim even if the jury had been discharged without Gibbs' consent. (*People* v. *McNally* (1980) 107 Cal.App.3d 387 [165 Cal.Rptr. 715].) We need not answer that question, however, because the jury was not discharged here. ■ The real question is whether the judge could ignore Gibbs' personal decision to excuse that jury and start anew, on the basis he had previously rejected that opportunity.

Gibbs' "waiver" of his right to a mistrial was made in October. The court conducted lengthy inquiry before concluding Gibbs had "voluntarily,

knowingly and intelligently made the personal election not to make such a motion." In January, counsel requested a special hearing three days before the trial was scheduled to resume. Counsel indicated to the court Gibbs had only recently changed his mind, and now desired a mistrial and a new jury. The court concluded this change of heart was "clearly untimely" and "not sufficient grounds to set aside the clear express waiver of the right to make a motion for a mistrial that [Gibbs] made on October 13, 1983. . . . And Mr. Gibbs, in this court's opinion, did waive the right to do so, and he is bound by that waiver, in absence of good cause, to set that waiver aside. No good cause being shown, the court is going to deny any motion if it is made to set it aside, and therefore, the court is denying the late, tardy motion for a mistrial."

The trial court appears to have applied a standard similar to Penal Code section 1018, which outlines the defendant's obligation to show good cause before withdrawing a guilty plea. A guilty plea involves the waiver of constitutional rights and ordinarily leads directly to judgment. Thus, the court, the prosecution, counsel and the defendant all proceed on the assumption no trial will be necessary. The "waiver" of Gibbs' right to move for a mistrial is an entirely different creature. It is not a "waiver;" it is more correctly a refusal to waive double jeopardy protection. In that sense, the declination of an invitation to discharge the jury and waive the constitutional bar of double jeopardy is more akin to a plea of *not* guilty. In pleading *not* guilty and in refusing to move for a mistrial the defendant refuses to waive constitutional rights and demands full constitutional protection. A defendant need not show good cause to withdraw a not guilty plea and enter a guilty plea. (See *People* v. *Reza* (1984) 152 Cal.App.3d 647 [199 Cal.Rptr. 664].) By the same token, we conclude a defendant need not show good cause to waive his double jeopardy rights, even though he previously refused to waive them.

It is settled a defendant can change his mind after a motion for mistrial if he expresses that change of heart before the judge acts on it and actually discharges the jury. (*Cardenas* v. *Superior Court* (1961) 56 Cal.2d 273 [14 Cal.Rptr. 657, 363 P.2d 889, 100 A.L.R.2d 371].) The court there stated: "[W]e can see no good reason why a party making a motion during the course of a trial may not, upon reflection, withdraw it at any time before the court has made an order responsive to the motion. . . . If something had occurred to prejudice the opposing party by the motion's withdrawal, a different question would be presented; . . ." (*Id.,* at p. 276.)

We agree the situation might be different had Gibbs' change of heart caused some prejudice. But it caused none here. Even though the court

described Gibbs' conduct as a "delaying tactic," in nearly the same breath the court offered counsel the opportunity to recall any witnesses, an offer, in terms of time-consumption, akin to starting the trial anew but for selecting a new jury. We know of no authority requiring the defendant justify his change of heart in any situation remotely similar to this. Moreover, recent authority from our Supreme Court suggests the contrary. (See *People* v. *Courts* (1985) 37 Cal.3d 784 [210 Cal.Rptr. 193, 693 P.2d 778].)

Gibbs' motion for a mistrial on the eve of resuming the trial was not coupled with a motion for continuance or any other condition making "timeliness" an issue. While perhaps it seems unfair the court cannot hold a defendant to his previous decision, the paramount concern is the defendant's peculiarly personal freedom of choice in asserting a constitutional double jeopardy claim. It is solely the defendant's decision to proceed with a jury perhaps prejudicially tainted and an attorney perhaps ill-prepared; and the defendant's decision not to go forward but instead undergo a second prosecution free of that taint.

Finally, we are especially confident of our ruling when viewed in full context: the "taint" here went to the very heart of Gibbs' constitutional rights to a fair trial with the effective assistance of counsel because the denial of the mistrial motion denied him "continuity of representation." (*People* v. *Manson, supra,* 61 Cal.App.3d at p. 201.) Newly appointed counsel was forced to argue a case he had not heard and dispute the credibility of witnesses he had not seen, all to a jury he had not selected; indeed, a jury "in limbo" for 21 months. The last motion for mistrial should have been granted and the resultant judgment must be reversed.

Gibbs requests we order the disqualification of the trial judge in future proceedings in this case, citing *People* v. *Kaanehe* (1977) 19 Cal.3d 1, 15 [136 Cal.Rptr. 409, 559 P.2d 1028]. Unlike *Kaanehe,* there were no improper communications between the prosecutor and the trial judge. The request here only suggests the trial judge might be upset by this reversal, following so closely the earlier writ on this same case. (*Leversen* v. *Superior Court, supra,* 34 Cal.3d 530.) Nothing of substance is offered to support Gibbs' request and nothing we know of distinguishes this case from any other reversal caused by trial court error. Future proceedings will be conducted as they are in all reversed cases.

Based on the foregoing, we need not discuss Gibbs' other contentions of error as they are unlikely to recur on retrial.

The judgment is reversed.

Crosby, Acting P. J., and Sonenshine, J., concurred.

A petition for a rehearing was denied March 6, 1986, and respondent's petition for review by the Supreme Court was denied May 8, 1986.