[No. D027107. Fourth Dist., Div. One. Dec. 10, 1996.]

ARMANDO ABREU ACEVES, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

## COUNSEL

Francis J. Bardsley, Public Defender, Danny Lester and Gary R. Nichols, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Paul J. Pfingst, District Attorney, Thomas F. McArdle and Edward J. Mantyla, Deputy District Attorneys, for Real Party in Interest.

## OPINION

HALLER, J.—In this case, a supervising deputy public defender requested that the deputy assigned as trial counsel be relieved because of a conflict. The supervising deputy asserted he was unable to relate the facts that generated the conflict without breaching client confidences. He did, however, declare the conflict was strictly between the client and the public defender's office, it was created by a statement from the client that had caused a complete breakdown of the attorney-client relationship and it had nothing to do with threats to witnesses as the People suggested. The trial court nevertheless conditioned withdrawal on divulging the facts underlying the conflict and denied the motion.

We conclude the public defender's disclosure was sufficient to permit withdrawal, and the trial court should have granted the motion instead of placing the attorney in the untenable position of asserting the client's constitutional right to effective assistance only by sacrificing client confidences. Accordingly, we grant the petition.

### FACTUAL AND PROCEDURAL BACKGROUND

*First motion to withdraw*

The People filed a complaint against Armando Abreu Aceves (Abreu) charging him with attempted murder, penalty enhancements and previous

"strikes." About the time the case was first called for trial, Abreu's attorney, Deputy Public Defender Danny Lester (Lester), advised the trial court he had an actual conflict with Abreu, which had just arisen and could not be waived, and requested the appointment of new counsel. Lester declared the conflict caused a "complete, utter and absolute" breakdown in the attorney-client relationship and precluded him from continuing the representation. He also stated he could not reveal the nature of the conflict without divulging client confidences or breaching ethical duties.

The People suggested the basis for Lester's motion involved threats to witnesses, threats that were neither privileged nor a proper basis for a "conflict." Concerned with the People's assertions, the lateness of the motion, and the defendant's "recalcitrant"[1] conduct, the court asked Lester if the conflict had been created by Abreu or involved issues of dual representation or safety. Lester replied nonresponsively repeating he could not discuss the conflict without revealing privileged communications.

The court refused to excuse counsel absent an explanation of the general nature of the conflict. The public defender followed with a writ petition. We denied the petition "without prejudice to file a renewed application to be relieved as counsel founded upon a showing of the nature of the conflict, which showing may be made in camera."[2] (*Aceves* v. *Superior Court* (Oct. 11, 1996) D026968 [nonpub. opn.].)

*Second motion to withdraw*

A few days after the denial of the petition, Deputy Public Defender Gary Nichols (Nichols) appeared in the trial court[3] and renewed the motion to be relieved as counsel. Nichols announced he was ready to reveal the nature of the conflict and, adding the caveat he could not discuss anything that was privileged or would violate ethical duties, stated in open court[4] that:

the conflict had come about as a result of a statement from Abreu to Lester,

---

[1]Abreu filed *Marsden* motions (see *People* v. *Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44]) in the past and had a motion to disqualify the judge pending.

[2]Lester had originally requested an in camera hearing on the motion but later withdrew the request.

[3]Nichols appeared in place of Lester who was, by this time, out of state apparently on vacation.

[4]Nichols declined the invitation to address the court in camera saying: "Our obligation to the client is to maintain his confidences, period. I don't think that telling the court, even in camera with [the transcript] sealed, lives up to that obligation. I would gladly do it . . . if I thought I could serve both masters at the same time. [¶] But my understanding of the law is I can't disclose that information to anyone outside of the law firm—outside of the attorneys that represent this *gentleman*. I cannot disclose [that information] to the court."

"[i]t's a statement no one can ignore,"

the statement caused an absolute, irretrievable breakdown in the attorney-client relationship such that no member of the public defender's office could represent Abreu,

the conflict did not directly relate to representing Abreu in this proceeding or any other pending case,

the public defender's office does not declare conflicts of interest lightly and

Nichols could not describe the facts which generated the conflict without violating the privilege or breaching ethical obligations.

Unlike Lester's approach in the earlier motion, Nichols assured the court there was no basis for speculation that the conflict involved third parties or threats to witnesses: It was, to the contrary, a matter strictly between Abreu and the office of the public defender. Specifically, Nichols stated, "There is no third-party involvement in the factual basis of the conflict." Nichols went on to say, while nothing prevented the conflict from arising with successor counsel, the facts were situational—that is, peculiar to representation by Lester and the public defender's office—and there was no reason for Abreu to make the statement to new counsel.

Although accepting the honesty of Nichols's representations, the trial court was unsatisfied it knew anything more about the conflict than it knew at the last juncture and, therefore, denied the motion.

Abreu's counsel followed with another petition.[5] We issued an order to show cause and set the matter for argument.

### Discussion

The debate before us focuses on disclosure. Relying chiefly on *Uhl v. Municipal Court* (1974) 37 Cal.App.3d 526 [112 Cal.Rptr. 478], the deputy public defender argues the trial court should have excused the public defender's office without requiring a further explanation of the facts giving rise to the conflict after he made, and the court accepted, his representations.

---

[5]Although this petition like the previous one was filed in Abreu's name, the transcripts reflect Abreu was not asked his position on the motion to withdraw. Both deputy public defenders represented that the conflict rendered the office incapable of providing Abreu effective assistance. Given this posture, we view the writ petition as brought by the office of the public defender notwithstanding the filing in the client's name.

The People counter *Uhl* is invalid and the trial court must be permitted to inquire into the facts of the conflict so that it has sufficient information upon which to evaluate whether the request to be relieved is meritorious. The People further assert that, if trial counsel refuses to reveal facts because of the attorney-client privilege, the court may disregard trial counsel's other representations and deny the motion.

I

Before we examine *Uhl*, we review the principles governing conflicts. The starting place is defendant's right to assistance of counsel under the federal and state Constitutions. (U.S. Const., 6th Amend.; Cal. Const., art. I, § 15.) " 'These constitutional guarantees entitle a defendant "not to some bare assistance but rather to *effective* assistance." . . . That entitlement includes the right to representation that is free from conflicts of interest.' " (*People* v. *Hardy* (1992) 2 Cal.4th 86, 135 [5 Cal.Rptr.2d 796, 825 P.2d 781], italics in original, citation omitted.)

Conflicts come in all shapes and sizes. As our Supreme Court describes it:

" 'Conflicts of interest may arise in various factual settings. Broadly, they "embrace all situations in which an attorney's loyalty to, or efforts on behalf of, a client are threatened by his responsibilities to another client or a third person *or by his own interests*."

"Although 'most conflicts of interest seen in criminal litigation arise out of a lawyer's dual representation of co-defendants, the constitutional principle is not narrowly confined to instances of that type.' . . . Thus, a conflict may exist 'whenever counsel is so situated that the caliber of his services may be substantially diluted.' " (*People* v. *Hardy*, *supra*, 2 Cal.4th at pp. 135-136, italics in original; citations omitted.)

*Uhl* involved a conflict with an existing client. Defendant Uhl would have qualified for representation by the office of the public defender but for a conflict between Uhl and a client the office represented in an unrelated matter. (*Uhl* v. *Municipal Court*, *supra*, 37 Cal.App.3d at p. 528.) Thus, the deputy public defender asked the municipal court to appoint private counsel for Uhl but, at the same time, refused to elaborate on the nature of the relationship underlying the conflict on grounds that doing so would breach confidences of the existing client. (*Ibid.*) The municipal court denied the request. (*Ibid.*)

The case thereafter moved back and forth between municipal and superior courts before making its way to the Court of Appeal. On an initial writ

petition, the superior court determined the municipal court was not required to appoint another lawyer because defense counsel had neither disclosed the nature of the relationship underlying the conflict nor stated disclosure would breach a confidential relationship with a present client. (*Uhl* v. *Municipal Court, supra,* 37 Cal.App.3d at p. 528.) The superior court nevertheless directed the municipal court to rehear the matter. (*Ibid.*)

On rehearing, the deputy public defender told the municipal court there was a conflict between Uhl and an existing client, which could not be divulged without breaching the confidences of the existing client. (*Uhl* v. *Municipal Court, supra,* 37 Cal.App.3d at p. 529.) Although the municipal court once again denied the motion, the superior court issued a peremptory writ of mandate directing the appointment of alternate counsel. (*Ibid.*)

On appeal, the Court of Appeal held counsel's representation of a conflict of interest with an unnamed client in another proceeding was sufficient to permit his withdrawal. (*Uhl* v. *Municipal Court, supra,* 37 Cal.App.3d at pp. 527-528.) Further rejecting the argument that defense counsel was required to make a showing of facts and circumstances giving rise to the conflict, the appellate court concluded, in light of the "right to untrammeled and unimpaired assistance of counsel" under the federal and state Constitutions, the Canons of Ethics and Rules of Professional Conduct, the appointment of alternate counsel was appropriate. (*Id.* at pp. 528, 536.)

Similarly, in *Leversen* v. *Superior Court* (1983) 34 Cal.3d 530 [194 Cal.Rptr. 448, 668 P.2d 755], the trial court denied defense counsel's motion to withdraw after midtrial discovery that his firm represented a rebuttal witness in another proceeding. On the ensuing writ petition, the Supreme Court concluded defendant's constitutional right to assistance of counsel could be impaired by the conflict. (*Id.* at pp. 530, 538.) Faulting the trial court for failing to accord sufficient weight to the assertions of counsel and members of his firm that continued representation was precluded by the conflict, the Supreme Court added: "[Counsel's] duty not to use [the witness's] confidences against him prevented [counsel] from even discussing these or other possibilities with his client, [the defendant], let alone revealing them in open court. Having accepted the good faith and honesty of [counsel's] statements on the subject, the court was bound under the circumstances to rule that a conflict of interest had been sufficiently established." (*Id.* at p. 539, fn. omitted.)

 Here, although there is considerable doubt whether Lester's disclosure, in reality little more than the blanket assertion of an actual conflict, satisfied *Uhl* (see *Uhl* v. *Municipal Court, supra,* 37 Cal.App.3d at p. 528),

Nichols's representations were sufficient to warrant relief. Consistent with *Uhl*, Nichols described the conflict as one that (1) was confined to Abreu and the office of the public defender, (2) did not involve threats to witnesses or third parties, (3) did not relate to other cases and (4) had resulted in a complete breakdown in the attorney-client relationship: it was as such a classic conflict where duty of loyalty to the client is compromised by the attorney's own interests. Nichols further represented as an officer of the court he could say no more about the conflict without violating the privilege or breaching ethical duties, and the trial court responded it "[did not] doubt [Nichols's representations] for one moment."[6]

Where as here the duty not to reveal confidences prevented counsel from further disclosure and the court accepted the good faith of counsel's representations, the court should find the conflict sufficiently established and permit withdrawal. (*Uhl* v. *Municipal Court, supra*, 37 Cal.App.3d at pp. 527-528; *Leversen* v. *Superior Court, supra*, 34 Cal.3d at p. 539.)

II

A

The People argue the policy of deferring to defense counsel is not and should not be the law. Citing *People* v. *Bonin* (1989) 47 Cal.3d 808 [254 Cal.Rptr. 298, 765 P.2d 460], *People* v. *Mroczko* (1983) 35 Cal.3d 86 [197 Cal.Rptr. 52, 672 P.2d 835] and various other cases, the People take the position *Uhl* has been overruled sub silentio, the trial court is required to make an inquiry into the conflict and the court may not rely on the word of defense counsel alone.

We disagree. First, *Uhl* has not been overruled. Nor does it stand for the proposition, as the People suggest, that the trial court must accept a sweeping claim of conflict and "rubber stamp" counsel's request to withdraw. To the contrary, in *Uhl*, there was a discussion of the general nature of the conflict—that the conflict existed between Uhl and an unnamed client the office represented in another matter—but it was limited in scope by privileged matters.

Thus, *Uhl* does not abrogate the court's duty of inquiry or the attorney's obligation to provide information about the conflict. It simply limits the range of inquiry to prevent the required disclosure of communications that are confidential but form the factual basis of the conflict. The trial

---

[6]The People concede the trial court accepted the honesty and sincerity of Nichols's representations.

court still has a duty to explore the conflict, and counsel has a corresponding duty to respond, and to describe the general nature, as fully as possible but within the confines of privilege. At the same time, we note *Bonin*, *Mroczko* and the other cases do not directly involve requests to withdraw because of a conflict intertwined with a confidential communication from the client. In short, as we see it, *Uhl* remains unaffected by *Bonin*, *Mroczko* and other cases.

■ In the case before us, the trial court inquired and the deputy responded as completely as he could—that the conflict was between Abreu and the public defender, it caused a complete breakdown of the relationship and, most important, the public defender was not improperly relying on threats to witnesses or third parties as the basis of the conflict. Although counsel did not reveal the specific facts of the conflict, he gave the court meaningful information about the general nature of the conflict and made clear he properly evaluated exceptions to the privilege; all parties, including the prosecutor, were satisfied the communication was privileged.[7] Under the circumstances, the disclosure was sufficient to permit withdrawal.

Second, the point of *Bonin*, *Mroczko* and the duty-of-inquiry cases is, as the People concede, to avoid the inevitable reversal on appeal where counsel advises the trial court, intentionally or otherwise, there is *no* conflict. Our case is the opposite: The public defender insists there *is* a conflict that necessitates immediate withdrawal and appointment of counsel with undivided interests so Abreu can be properly represented and the potential for reversal eliminated.

In this vein, we note case law ties the duty of inquiry to the duty of the trial court to ensure the " 'trial is conducted with solicitude for the rights of the accused' " and to " 'protect the right of the accused to have the assistance of counsel.' " (*Holloway* v. *Arkansas* (1978) 435 U.S. 475, 484 [55 L.Ed.2d 426, 434, 98 S.Ct. 1173], citing *Glasser* v. *U.S.* (1942) 315 U.S. 60, 71 [86 L.Ed. 680, 699-700, 62 S.Ct. 457].) Thus, we would expect to see the duty of full inquiry triggered when defense counsel discounts the effect of a potential conflict. If "protect[ing] the right of the accused to have the assistance of counsel" is the goal, however, we question whether the scope of inquiry is as broad where as here the public defender's office asserts it has a disabling conflict, cannot provide effective assistance and must withdraw from the case.

Third, we reject the contention that in the absence of conflicting evidence, the court may not rely on the word of the defense lawyer alone. "[M]ost

---

[7]As noted in part II. B, *post*, the People concede the communication was privileged.

courts have held that an attorney's request for the appointment of separate counsel, based on his representations as an officer of the court regarding a conflict of interests, should be granted." (*Holloway* v. *Arkansas, supra,* 435 U.S. at p. 485 [55 L.Ed.2d at p. 435].) As the United States Supreme Court explains: "In so holding, the courts have acknowledged and given effect to several interrelated considerations. An 'attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists and will probably develop in the course of a trial.' . . . Second, defense attorneys have the obligation, upon discovering a conflict of interests, to advise the court at once of the problem. . . . Finally, attorneys are officers of the court and ' "when they address the judge solemnly upon a matter before the court, their declarations are virtually made under oath." ' . . . We find these considerations persuasive." (*Id.* at pp. 485-486 [55 L.Ed.2d at p. 435], citations omitted.)

The same considerations apply here. In addition, where the conflict is between lawyer and client—rather than between two or more clients—the lawyer is properly concerned divided loyalties may affect his or her full and active representation. Moreover, if there is no reason to doubt counsel's sincerity, the trial court properly relies on the lawyer. (*U.S.* v. *Hurt* (D.C. Cir. 1976) 543 F.2d 162, 166-167 [177 App.D.C. 15] [client named defense counsel in suit].) Regardless of how others might react, only the trial lawyer can realistically appraise whether the conflict may have an impact on the quality of the representation or whether counsel's self-interest might stand in the way. (*Ibid.*, see also *Smith* v. *Lockhart* (8th Cir. 1991) 923 F.2d 1314, 1321; see also *People* v. *Hardy, supra,* 2 Cal.4th at pp. 137-138.) In such cases, the court by necessity relies on the lawyer.

Finally, as Nichols stated, the public defender's office does not declare conflicts lightly. Rather, as indicated in the original petition and at oral argument, conflicts proceed up the chain of command for review by the supervisor of the deputy assigned to try the case, the chief trial deputy and higher administrators in the office.[8]

Thus, at least in this case, the trial court was not being asked to take one lawyer's word for it. It had the assurance the matter had been evaluated by attorneys with different levels of experience and responsibility and, were it

---

[8]As far as the public defender is concerned, we believe an affirmative representation by personal appearance or declaration to the effect that the chain of command has reviewed the facts and concurs there is a conflict is a necessary prerequisite for this type of motion. There is ample support that such a procedure was followed in this case.

possible, the office would continue the representation.[9] We add such review by superiors in the office of the public defender makes the People's argument that a deputy may seek to be relieved to go on vacation a remote possibility.[10] Likewise, the fact that, if the motion is granted, the events leading up to withdrawal are subject to scrutiny and, if appropriate, reporting by successor counsel, makes unlikely the People's assertion the motion will be used for delay or other improper purposes. In sum, the procedure to a large degree contains its own checks and balances.

## B

We also reject the People's argument that defense counsel's option was simply to provide privileged information in camera or remain on the case. First, the People provide no support for their premise. Second, the argument is seriously undercut by the People's concession that the attorney-client privilege appears with few exceptions to be "absolute" and the exceptions apparently do not apply.[11] Finally, if endorsed, such a result would pit the right to conflict-free representation against the preservation of client confidences, exert a chilling effect on the constitutional guarantee of effective assistance and free flow of attorney-client communications, and leave the public defender with a Hobson's choice no attorney should have to make.

## C

The People also argue that by allowing the public defender to declare a conflict without disclosing the background facts, we are transferring the trial court's exercise of discretion to the defense attorney and violating the principle of separation of powers. The Supreme Court rejected a very similar argument in *Holloway* v. *Arkansas*, *supra*, 435 U.S. 475, after the trial court denied three codefendants' requests for separate counsel based on appointed counsel's representation he could not provide effective assistance because of a possible conflict as a result of confidential information received from the clients. Faulting the trial court for depriving the defendants of their Sixth Amendment guarantee and failing to properly consider the representations of counsel, the Supreme Court stated:

---

[9]Nichols added, had the conflict been limited to Lester and Abreu, the office "would do its best to get another attorney up to speed to adequately represent this defendant as quickly as possible," but that was not the case.

[10]See footnote 3, *ante*.

[11]The People assert: "Absent a client consulting an attorney to enable the commission of a crime or a fraud (Evid. Code, § 956), or the attorney's belief that revealing privileged communications is necessary to prevent a criminal act likely to result in death or substantial bodily injury (Evid. Code, § 956.5), or a breach of duty (Evid. Code, § 958), the attorney-client communication privilege appears to be absolute. A court may not force the attorney or the client to reveal matters within the attorney-client privilege, except in three circumstances which do not appear to be applicable here. . . ." (Fn. omitted.)

"The State argues . . . that to credit [counsel's] representations to the trial court would be tantamount to transferring to defense counsel the authority of the trial judge to rule on the existence or risk of a conflict and to appoint separate counsel. In the State's view, the ultimate decision on those matters must remain with the trial judge; otherwise unscrupulous defense attorneys might abuse their 'authority,' presumably for purposes of delay or obstruction of the orderly conduct of the trial.

"The State has an obvious interest in avoiding such abuses. But our holding does not undermine that interest. When an untimely motion for separate counsel is made for dilatory purposes, our holding does not impair the trial court's ability to deal with counsel who resort to such tactics. [Citations.] Nor does our holding preclude a trial court from exploring the adequacy of the basis of defense counsel's representations regarding a conflict of interests *without improperly requiring disclosure of the confidential communications of the client. . . .*" (435 U.S. at pp. 486-487 [55 L.Ed.2d at pp. 435-436], italics added; fn. omitted.)

Although parenthetically noting the case did not require inquiry into the authority to compel disclosure of client confidences, the court added "[s]uch compelled disclosure creates significant risks of unfair prejudice." (*Id.* at p. 487, fn. 11 [55 L.Ed.2d at p. 436].)

The same applies to the separation of powers argument. The trial court maintains the authority to (1) inquire into counsel's representations as long as it does not improperly require the disclosure of confidential client communications and (2) punish attorneys who abuse the process for purposes of obstruction or delay. However, where as here counsel maintains he must step down because of a disabling conflict, the conflict concededly involves privileged communications and the trial court admittedly accepts counsel's representations, the court may not deny the motion to withdraw.

Let a writ of mandate issue directing the superior court to vacate the order of October 15, 1996, denying the motion to relieve the public defender and enter an order consistent with this opinion. The stay issued on October 18, 1996, is vacated. This opinion shall be final as to this court in 10 days. (Cal. Rules of Court, rule 24(d).)

Kremer, P. J., concurred.

BENKE, J., Dissenting.—I respectfully but strongly disagree with my colleagues. The attorney-client privilege and the duty to maintain inviolate client confidences are statutory enactments with constitutional implications and are deserving of the strongest protection. It is necessarily the case,

however, that in some circumstances rights and protections must yield to ensure the preservation of other equal or greater interests. In this case we deal with such circumstances.

On the morning trial was set to commence, counsel informed the court a conflict existed with his client such that he was ethically unable to proceed to trial. Noting such conflict was the result of a communication with the defendant, counsel refused to disclose, to any useful extent, its nature. A second hearing came no closer to disclosing the nature of the conflict. All the while, Aceves has refused to waive his right to a speedy trial.[1]

Counsel's reticence and the defendant's refusal to waive his right to a speedy trial placed the trial court in an unenviable position. The court could refuse to discharge the attorney and, in the event of a conviction, face the certain prospect of an attack based on the claim defendant proceeded to trial with conflicted counsel. On the other hand, the court could abdicate its responsibility to determine an important legal issue and to protect the rights of the accused to a speedy trial by blindly accepting counsel's conclusion a conflict exists. Doing so, however, might well eliminate or compromise other of the defendant's rights in the event counsel's legal conclusion concerning the conflict was in error. For example, an in-custody defendant such as Aceves would face a long delay of his case with all the detriments inherent in a less than speedy trial.[2]

None of this is necessary. If one assumes the confidentiality protection exists to assure the defendant is adequately represented, it serves no ultimate interest of the defendant or the criminal justice system to require a court to make a decision as crucial as the discharge of counsel totally ignorant of the circumstances claimed to require it. A wise balancing of the interests involved leads to the conclusion that, at least to a degree, the attorney-client privilege and the duty to maintain confidences must yield to the obvious need of the trial court to have information on which to base a significant legal decision.

This need for a balancing of conflicting rights and interests in the context of the attorney-client privilege was discussed in *People* v. *Godlewski* (1993) 17 Cal.App.4th 940 [21 Cal.Rptr.2d 796].) There, three defendants were on trial for murder. One of the defendants made admissions to his attorney that were overheard by a jail inmate. The statements remained protected by the

[1]Indeed, defense counsel requested a stay of the trial over Aceves's objection and we granted the stay on September 30, 1996, pursuant to a good cause finding under Penal Code section 1382.

[2]The People have argued this case involves gang-related activities in which witnesses' appearances may be tenuous.

attorney-client privilege but a codefendant argued the privilege should yield to his constitutional right to a fair trial. Significantly, while ultimately rejecting the codefendant's contention under the facts of that case, the court recognized the need, under extraordinary circumstances, for a balancing of the rights implicated by the attorney-client privilege and other rights in conflict with it. (*Id.* at pp. 943-950.)

In the present case any compromise of the privilege would be minor. There is no need for a confidence to be released to the world—only to the trial judge, or if appropriate to another judge, in a closed hearing resulting in a sealed transcript. Further, it may not be necessary in such a closed hearing to reveal the confidence; only enough must be shown under the circumstances of the case to sufficiently demonstrate a conflict exists. It is my view counsel's comments in this case have not reached that stage.

*Uhl* v. *Municipal Court* (1974) 37 Cal.App.3d 526 [112 Cal.Rptr. 478] (*Uhl*), is not to the contrary. At the outset in that case the public defender concluded a conflict would exist with an existing client if required to represent Uhl. When the public defender did not elaborate further on the nature of the conflict, the municipal court appointed the public defender to represent him. Uhl sought a writ of mandate to compel the appointment of private counsel. The superior court denied the writ since the public defender did not disclose the nature of the relationship out of which the conflict arose or state that the mere disclosure of the relationship would require a breach in the confidential relationship with the existing client. The superior court required the municipal court hold a second hearing to consider the appointment of counsel. At that hearing the public defender again asserted a conflict and stated the nature of the relationship giving rise to the conflict could not be disclosed without breaching the confidence of the existing client. The municipal court again appointed the public defender to represent Uhl. This time Uhl's petition for a writ of mandate was granted, directing the appointment of separate counsel. Real party in interest, the People, appealed. (*Id.* at pp. 528-529.)

The Court of Appeal noted it could find no case raising the question "whether any showing of the facts and circumstances that give rise to the potential conflict or prejudice is required, or whether the court can rely on the assertion of the attorney." (*Uhl, supra,* 37 Cal.App.3d at p. 529, fn. omitted.) The court then reviewed at length cases dealing generally with the problem of conflicts arising from the appointment of a single attorney to represent multiple defendants. (*Id.* at pp. 529-530.)

While admittedly there is some broad suggestion in *Uhl* that counsel is not required to breach a confidence in declaring a conflict, I take from *Uhl* only

the following: Given the particular potential for conflict arising when one attorney represents multiple defendants, a representation by counsel that a conflict exists is a sufficient showing to require counsel's discharge without further elaboration or inquiry, at least where the claim of conflict is made early in the case. (*Uhl, supra,* 37 Cal.App.3d at pp. 530-536.)

Under the facts of *Uhl,* where there is an early report of a situation in which conflict often occurs, a balancing of the interest in maintaining a client confidence may outweigh any competing interest. However, under other circumstances, like those in the present case, it would be a wholesale abdication of judicial authority and an abandonment of a court's responsibility to protect the rights of a defendant to discharge counsel without an inquiry sufficient to convince the court a conflict exists. I cannot join in such an act.